KENNETH ADAMS, Doing Business as SAMBO'S PAN-
CAKES and CLARENCE E. MATTHEWS, Appel-
lants, v. GORDON LAWSON, Respondent.

No. 5537

December 9, 1968                    448 P.2d 695

*Woodburn, Forman, Wedge, Blakey, Folsom and Hug,* of
Reno, for Appellants.

*Richard C. Minor,* of Reno, for Respondent.

## OPINION

By the Court, THOMPSON, C. J.:

The district court denied the defendants' Rule 60(b)(1) motion to set aside a default judgment entered against them.[1] This appeal is from that ruling. The motion was timely made in good faith and tendered a meritorious defense. The validity of the discretionary order turns upon whether the failure of defense counsel to appear in time was an inadvertence falling within the protection of the rule. We hold that the district court exceeded the permissible limits of its discretion in precluding a trial on the merits, and reverse.

The surest path to justice is a trial upon the merits. This objective should not be frustrated unless the conduct of counsel in allowing the entry of default and judgment is of such a character as to justify a departure from that objective in order to preserve the integrity of the time sequences prescribed by our rules of procedure. The conduct of defense counsel in this case was not of that character.

The record shows that after filing suit, plaintiff's counsel entered into settlement negotiations with the California claims adjuster for the insured defendants, and gave a written open extension of time within which to respond to the complaint, subject to 20 days written notice of withdrawal of extension. Plaintiff's counsel also negotiated with a local adjuster representing the same insurance carrier. Settlement failed to materialize and, on September 12, 1967, the California adjuster was notified by letter that the defendants would have an additional 20 days from that date within which to answer.

On September 21, 1967, defense counsel received a claims file from the local adjuster and was employed to defend the

---

[1] The rule in pertinent part reads: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment * * * for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect * * *."

case. That file did not contain a copy of the September 12 letter directing an appearance within 20 days thereafter. It did contain the open extension letter which counsel read.

Four days later defense counsel received a second claims file from the California adjuster. This file included the open extension agreement plus the September 12 letter. For some reason, defense counsel did not see the September 12 letter among the documents in the California file and was unaware that the open extension had been withdrawn. Consequently he did not file a responsive pleading for the defendants. Plaintiff's counsel did not know that defense counsel had been engaged and, when a responsive pleading was not forthcoming, proceeded to enter default and secure judgment.

The district court expressed no reason for its refusal to set aside the judgment thus secured. We can only assume that the court looked upon the oversight of defense counsel as inexcusable. Such a view is unduly harsh and subverts our announced policy to encourage trial upon the merits. Neither does the lower court's ruling support the subordinate concern of preserving the integrity of the time sequences prescribed by our rules of procedure, since the time to respond in this case was fixed by unilateral grant of plaintiff's counsel, and not by rule. [Cf. Intermountain Lumber v. Glens Falls, 83 Nev. 126, 424 P.2d 884 (1967), where counsel advised his opponent that the rules must be met and no quarter would be asked and none would be given.] The withdrawal of that grant was simply overlooked. Since no significant policy is served by the ruling below we do not hesitate to find an abuse of discretion. Our holding is in line with prior expressions of this court in Hotel Last Frontier v. Frontier Properties, 79 Nev. 150, 380 P.2d 293 (1963); Horton v. New Pass Co., 21 Nev. 184, 27 P. 376 (1891). See also: Blakeney v. Fremont Hotel, 77 Nev. 191, 360 P.2d 1039 (1961). The oversight of defense counsel was an inadvertence falling within the protection of Rule 60(b)(1).

The dissenting opinion rests mainly upon the decision of Bryant v. Gibbs, 69 Nev. 167, 243 P.2d 1050 (1952). That case is inapposite. There, the defendant was served with process and knew that he had to appear as directed. He mislaid the document at his home and did not find it until after default and judgment were entered. The district court denied him relief and was affirmed on appeal. The affirmance was on the basis that no reason for the inadvertence or neglect was given. The statute construed in Bryant (8640, N.C.L. 1931–1941 Supp.) required a showing of "good cause" in addition to inadvertence. Rule 60(b) allows a default to be set aside "upon such

terms as are just" and does not require that a reason for inadvertence be given. Apart from this difference between the statutory language construed in Bryant and the present Rule 60(b), the instant case is factually distinguishable from Bryant in a material respect. The essence of Bryant is that a defaulter must give a reason for not appearing in time when he is aware of his duty to do so. Here, however, counsel was not aware of such duty to enter an appearance. All that he could say after learning that judgment had been entered was that he did not see the September 12 letter. No further explanation was possible.

In reviewing cases which involve evidentiary conflicts and demeanor evidence the law and good sense each demands that we treat a discretionary ruling of the trial court with deference. In such cases we cannot resolve evidentiary conflicts, weigh evidence, or assess the credibility of unobserved witnesses. However, in the matter before us there is no conflict in relevant facts; oral testimony was not received; demeanor evidence is not involved. The motion was presented to the district court on the file and the moving papers. The same papers are before us. In this limited situation the reasons for paying special deference to a discretionary ruling are not present. Bowles v. Beatrice Creamery Co., 146 F.2d 774, 780 (10 Cir. 1944); British America Assur. Co. v. Bowen, 134 F.2d 256, 260 (10 Cir. 1943); United States v. Corporation of the President, etc., 101 F.2d 156, 160 (10 Cir. 1939). Cf. Sisson v. Sisson, 77 Nev. 478, 367 P.2d 98 (1961); Garaventa v. Gardella, 63 Nev. 304, 169 P.2d 540 (1946). This court knows everything that the district court knew and is in precisely the same position to decide the controversy.

Reversed.

ZENOFF, BATJER, and MOWBRAY, JJ., concur.

COLLINS, J., dissenting:

Respondent Lawson (plaintiff below) and appellant Matthews, a cook for Sambo's Pancakes, became involved in an altercation on June 3, 1967. Lawson was injured, and he sued both Matthews and Adams (defendants below), doing business as Sambo's Pancakes.

Negotiations commenced between Lawson's counsel and Roy Hays of Republic Indemnity Co. of America, liability insurer of Adams and his employee, Matthews. Richard Minor, Lawson's counsel, and Hays entered into an agreement giving appellants an open-end extension of time within which to plead

to the complaint, subject however to 20 days written notice terminating the extension.

Minor also had negotiations with a Mr. Morris of K. H. Cornwall & Co., insurance adjusters.

On September 12, 1967, Minor notified Hays by letter to his California office that appellants would have 20 days from that date within which to answer the complaint. The time expired on October 2. No answers were filed, and the clerk entered default against Matthews and Adams on October 5, 1967. Ex parte proof of damages was made and judgment entered by the Court for Lawson and against Matthews and Adams for $1,352 damages, $400 attorney's fees, and $38.60 costs. Notice of entry of judgment was mailed to appellants October 12. A motion to vacate and set aside the default and judgment was filed on November 3.

This appeal is from a denial of that motion.

On September 21, 1967, Woodburn, Forman, Wedge, Blakey, Folsom and Hug were retained as defense counsel. Mr. Morris sent them his claim file containing copies of statements and correspondence. On September 25 Mr. Hays sent them his file also, which contained original statements, correspondence, the letter confirming the open extension to plead agreement, and the notice from Mr. Minor limiting the time to answer to 20 days from September 12. The Morris file contained a carbon copy of the agreement but not a copy of the notice of limitation.

The only issue before us is whether the trial court abused its discretion in refusing to vacate the default and judgment. To put it another way, where, as here, counsel (instead of the party in interest) is responsible for the neglect, what must he demonstrate to the court to justify setting aside the default?

The lower court rendered no opinion nor made any particular findings of fact in denying the motion to set aside the default, but, as the majority of this court holds, it must have concluded that the neglect admitted by counsel was inexcusable. The majority says that was an abuse of discretion by the trial judge. But was it? Having before us the same record as was before the lower court, as pointed out by the majority, we know everything that court knew and are in precisely the same position to decide the controversy. We should then have the same prerogative to analyze the facts presented in that record as did the trial court and draw such inferences as are reasonable in deciding whether the neglect was excusable and whether there really was any abuse of discretion by the lower court.

Appellants' counsel stated in his affidavit: "* * * that on

September 21, 1967, he received in connection with the captioned case an investigation file consisting of carbon copies of statements of witnesses and correspondence between representatives of K. H. Cornwall & Co., and a representative of Republic Indemnity Company of America; that among other documents said investigation file included a carbon copy of a letter from Roy Hays, speaking for Republic Indemnity Company of America, addressed to Richard C. Minor, attorney for plaintiff in the above entitled action, dated July 13, 1967, which confirmed an oral agreement granting the defendants an open extension of time within which to appear or otherwise plead, subject to twenty (20) days written notice; that said file also contained a letter dated September 18, 1967, from Richard C. Minor, to R. C. Morris of K. H. Cornwall & Co., with which there was enclosed a copy of a letter from Dr. Noah Smernoff, and which rejected an offer apparently theretofore made by Mr. Morris to Mr. Minor; and said letter made a counteroffer by which the dispute might be disposed of;

"That on September 25, 1967, affiant received from the aforesaid Roy Hays what appeared to be a file in connection with the captioned case, which appeared to consist of the original statements and correspondence, copies of which made up the file received on September 21, 1967, from R. C. Morris as aforesaid;

"That in fact the file received by affiant on September 25, 1967, contained a letter dated September 12, 1967, written by Richard C. Minor and addressed to Republic Indemnity Company of America at Los Angeles, California, to the attention of Roy Hays; that said letter among other things, advised the addressee that it might have an additional twenty (20) days in which to file an answer; that a true copy of that letter is marked Exhibit A and attached hereto and made a part hereof; that affiant, in examining the file which contained Mr. Minor's letter of September 12, 1967, Exhibit A hereto, for some reason did not see that letter among the documents making up the file, and was therefore wholly unaware of the notice thereby given to Republic Indemnity Company of America;

"That affiant has examined the investigation file delivered to him on September 21, 1967, together with the like file delivered to him on September 25, 1967, and has also examined a statement from a witness taken since those files were delivered to affiant; that the original and a copy of statements given by three other persons present at the time of the occurrence of the events described in the complaint and proposed answer appear in each of the above referred to files, and affiant is familiar with

the contents thereof; that the evidence made available to affiant compels the conclusion that to the extent that there was an altercation between plaintiff and defendant Matthews, it was provoked and brought about solely by the activities of plaintiff and one of his companions; * * *."

Now, what may we infer from that affidavit? Certainly we can infer that one or the other of those files contained the complaints served on Adams and Matthews. Had counsel even casually looked at them, he would have known that the complaint was filed June 21, 1967, an amended complaint was filed July 7, 1967, and that both appellants were served July 7, 1967. He would have known the identity of respondent's counsel. He likewise knew of the letter of July 13 from Hays to Minor confirming the open-end extension to plead.

From any one of those documents which counsel for appellant must have seen, he would have known that the time for answering in accordance with the rules was indeed long overdue. He could infer, because of his long experience as trial counsel, there must be some kind of extension in effect. When he did not see the letter from Minor to Hays requiring the answer within 20 days from September 12, he should have nevertheless been alerted by the letter of July 13 granting an open extension to plead to check with someone what the terms of the extension were. He certainly could have called Hays or Cornwall & Co., either one of whom could have told him of the end of the extension. And it does seem somewhat incredulous that counsel was not specifically informed by either Cornwall & Co. or Hays, who negotiated the open-end extension, that it had come to an end when they forwarded their files to him.

Notwithstanding the circumstances related above, counsel allowed the file to remain unattended from September 21, 1967, to October 5, 1967, when default was finally entered, and even after that until November 3 when he finally got around to filing a motion to set aside the default after notice of the entry of judgment had been served upon his clients, Kenneth Adams and Clarence E. Matthews. He had never entered an appearance in the case prior to that time.

Without reviewing again all the cases decided by this Court in construing NRCP 60(b), I think the rule announced in Bryant v. Gibbs, 69 Nev. 167, 243 P.2d 1050 (1952) is controlling over the facts presented here. That case stands for the rule that the affidavit or other proof offered supporting a motion to set aside a default must show or demonstrate facts of excusable neglect or inadvertence. Words of neglect or inadvertence in the abstract or as conclusions are not sufficient to

justify the relief asked. See also: Intermountain Lumber and Builders Supply, Inc. v. Glens Falls Ins. Co., 83 Nev. 126, 424 P.2d 884 (1967); Nevada Industrial Guaranty Co. v. Sturgeon, 80 Nev. 254, 391 P.2d 862 (1964); Wyoming Pacific Oil Company v. Preston, 321 P.2d 154 (Cal.App. 1958); Yarbrough v. Yarbrough, 301 P.2d 426 (Cal.App. 1956); Baratti v. Baratti, 242 P.2d 22 (Cal.App. 1952); Shearman v. Jorgensen, 39 P. 863 (Cal. 1895); Harper v. Mallory, 4 Nev. 447 (1868).

Here, all that was shown is that "for *some* reason" appellants' counsel did not see the letter limiting the time to plead in the file received from Hays. It was neglect not to see it—because it was there—but no reason was shown why that neglect was excusable. There was no abuse of discretion by the lower court in denying the motion.

I dissent.